IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NORTH STAR ALASKA HOUSING CORPORATION, | ) | |
| Plaintiff, | ) | |
| | ) | No. 03-2699C |
| v. | ) | Judge Francis M. Allegra |
| | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY PROCEEDINGS AND MOTION TO STRIKE IN CAMERA SUBMISSION OF SUPPORTING AFFIDAVIT**

The Motion to Stay Proceedings brought by the United States ("Government") should be denied. First, pursuant to Rules of the Court of Federal Claims ("RCFC") 5(a) and 12(f), the Court should strike the supporting affidavit which the Government submitted *in camera* without obtaining the prior permission of the Court. Second, the claims in Case No. 03-2699C are not related to the claims in Case Nos. 98-168C and 02-1632C. Under the law, there is no basis to stay this litigation.

## I. The Court Should Strike the *In Camera* Affidavit Submitted by the Government Without Leave of Court in Violation of RCFC 5

In support of its motion for a stay, the Government submitted the *in camera* affidavit of an Assistant United States Attorney, Crandon Randell without prior permission of the Court. Pursuant to RCFC 5, respecting service of pleadings and other papers:

> Except as otherwise provided in these rules, every order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion, and every written notice, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served upon each of the parties.

The Government failed to serve the entirety of its Motion upon North Star, and did not obtain an order of the Court permitting them to make *in camera* filings respecting Case No. 03-1699C. Accordingly, pursuant to RCFC 12(f), the *in camera* affidavit submitted by the Government must be stricken.[1]

**II. The Government's Motion is Nothing More Than a Blatant Attempt to Prevent North Star from Litigating Any of the Government's Lease Violations**

The Government supports its Motion with an illegal *in camera* affidavit from Crandon Randell. RCFC 5(a). That said, the Government's statements in its Motion respecting the affidavit reveal the Government's true intent: that no litigation under the Lease should precede, irrespective of the substantive relationship between the claims in Case No. 03-1699C and Cases Nos. 98-168C and 02-1632C. Specifically, the Government states on page 7 of its Motion:

> [T]his case, No. 03-2699, pertains to the lease agreement that is the subject of case No. 98-168C and case No. 02-1632C. . . . Thus, witnesses documents who would appear or be relevant to, these cases are involved in investigation. . . . . [t]he integrity of the criminal investigation cannot be protected if discovery in the civil litigation proceeds concurrently [with the grand jury investigation].

(emphasis added). The Government's attempted action is outrageous and substantially violates North Star's rights. This attempt must not be allowed.

For a stay of litigation to be appropriate, the Government must prove: (1) the issues in the civil action are related and substantially similar to the issues in the criminal investigation; (2) hardship or inequity will exist if the civil case goes forward while the criminal investigation is pending; and (3) the duration of the requested stay is not immoderate or unreasonable. *See St. Paul Fire and Marine Ins. Co. v. United States*, 24 Ct. Cl. 513, 515 (1991) (citing *C3, Inc. v.*

[1] The April 3, 2003 Order in Case Nos. 98-168C and 02-1632C is inapplicable to the instant lawsuit, and permits the *in camera* submission of materials by the Government for the limited purpose of informing the Court of the status of the CID and how it pertains to the continued stay of Case Nos. 98-168C and 02-1632C.

*United States*, 5 Cl. Ct. 659, 660 (1984)). Defendant has not met one of these requirements in its filing. As set forth below, the issues in Case No. 03-1699C are newly-arising under the Lease, are not already before the Court[2], and thus cannot possibly be the subject of the criminal investigation begun by the Government in March or April 2003. Indeed, the Government's letter of March 24, 2003 (attached hereto) specifically set forth the areas of investigation, none of which are presented in the instant lawsuit. Moreover, a stay of all pending or future litigation under the Lease, as the Government is requesting, is immoderate and unreasonable. Accordingly, the Motion to Stay Proceedings should be denied in its entirety.

**III. Issues in Case No. 03-2699C**

North Star and the Government are operating under a 19.5-year Lease agreement for a 400-unit Army housing complex on Fort Wainwright, Alaska known as Birchwood Homes. Under the Lease, North Star submits its disputes to the Contracting Officer (also referred to as a "CO"), who must render a Contracting Officer's Decision ("COD") within 60 days, after which North Star has 12 months to appeal an adverse ruling to the United States Court of Federal Claims. Accordingly, on November 21, 2003, North Star filed Case No. 03-2699, a three-count complaint for (1) breach of contract; (2) breach of the duty of good faith and fair dealing; and (3) declaratory judgment, which addressed twelve COD issues which had not been previously before the Court.

The Government's attempt to have Case No. 03-2699 stayed is disingenuous because it involves Lease violations which are separate and distinct from the previously filed lawsuits, and

[2] Indeed, of the twelve issues which comprise Case No. 03-1699C, the Contracting Officer declined to issue a Contracting Officer's Decision for three of them because he contended they pertained to issues already pending before the Court. Thus, the Government's attempt to claim that the other nine issues are already before the Court is inconsistent with the Contracting Officer's action to issue Contracting Officer's Decisions with respect thereto.

it does not implicate the areas which were identified by the Government as the basis for the CID.[3]

This position is meant to deprive North Star of its day in Court, and to prolong the inequitable situation faced by North Star, in which the Government has unchecked authority to administer the Lease pursuant to whichever unjustifiable interpretation it wishes, and North Star has no viable means of redress.

**A. Carpet Replacement in Unit 884**

In unit 884, there was occupant damage to a portion of the carpet, replacement of which was the Government's responsibility under Section C.1.(s) of the Lease. However, carpet which would match the remaining carpet following replacement of the occupant-damaged portion of the carpet was unavailable at the time of replacement. The Lease requires, in Section E, that replacement items match existing items in units. The Government took the position that North Star was responsible for ensuring the matching of carpet even though the replacement of carpet in this unit would not have been necessary but for occupant damage. Moreover, a prior decision of the Contracting Officer respecting countertop replacement necessitated by occupant damage

[3] The genesis of the CID was an audit conducted by the USAG-AK Internal Review and Audit Compliance Office ("IRACO") as a result of its "finding" in 2001 that North Star had mistakenly overcharged the Government $135 for locksets on four occasions. In fact, the new site manager, who was unfamiliar with the practice, had mistakenly replaced the cylinder portion of the lockset but not the outer portion of the lockset, and when he realized his error, North Star fully reimbursed the Government. Based on this alleged "overcharge," IRACO conducted an audit of North Star's files between May and August 2002. By letter dated March 24, 2003 (attached), the Government alleged that: (1) facility history files did not contain work authorizations; (2) there were 26 duplicate work authorizations; (3) charges for specialized labor were not substantiated; and (4) deficiencies in the facility history files prevented the Government from determining whether there were other instances of overcharges for locksets. In the March 24 letter, the Government informed North Star that these "findings" had been forwarded to the Army's Criminal Investigation Command. Contrary to the allegations of the Government: (1) work authorizations were stored in a separate on-site filing area which the Contracting Officer's Representative ("COR") described as "totally acceptable," and during the audit, IRACO auditors stated they did not wish North Star to retrieve the work authorization files for their review; (2) North Star has been charging specialized labor rates for specialized work performed by qualified employees, and any dispute respecting the use of specialized labor rates is a contract dispute, not a criminal issue; (3) under the Lease, the Government, not North Star, issues work authorizations, and thus North Star is not responsible for any duplications; and (4) the lockset "issue" was a minor departure from procedure which was remedied as soon as it was brought to North Star's attention.

found that "[i]f a portion of a countertop in a room has been damaged by an occupant, and the damaged portion cannot be repaired to match the existing countertop, then the Government is financial responsible for the replacement of as much countertop as necessary to ensure that all countertop in the room matches." North Star requested a COD on the issue of carpet replacement in unit 884, and the CO issued a decision that North Star was financially responsible for replacing the unmatched portion of the carpet.

In its Motion, the Government contends that the issue respecting unit 884 relates to portions of Case No. 02-1632C respecting the Government's failure to issue work authorizations for the correction of occupant-caused damage and the Government's wrongful rejection of North Star's change of occupancy maintenance ("COM"), and portions of Case No. 98-168C respecting the Government's bad faith allocation of responsibility for occupant-damaged floor coverings. This contention is without merit. The claim in Case No. 98-168C involves the Government's application of depreciation to the replacement of floor coverings, which is not in any way at issue here. Moreover, the claims in Case No. 02-1632C refer to an overall course of conduct whereby the Government does not issue work authorizations for occupant damage when such work authorizations are necessary for North Star to ensure that it is properly reimbursed, and uses the acceptance inspection to wrongfully reject North Star's maintenance and thus increase the accrual of downtime days, which are used to reduce North Star's rent. There is no reasonable interpretation of Case Nos. 98-168C and 02-1632C in which one could find the issue of which party bears responsibility for replacing existing carpet to match replaced occupant-damaged carpet in unit 884.

**B. Interior Painting in Unit 704**

The Government ordered a full paint of Unit 704 regardless of the fact that the unit had recently been painted and was in good condition. The Government based its direction on Section E.8(d) of the Lease, which requires interior painting at the first change of occupancy after enumerated years, at three-year intervals. North Star contested the direction because Section E.8(d) of the Lease is not meant to require full paintings when a complete interior paint has been performed within the previous three-year interval. The Contracting Officer issued a decision adverse to North Star.

The Government contends that this issue relates to the portions of Case No. 02-1632C respecting the Government's rejection of North Star's maintenance in order to maximize downtime assessments against North Star. However, the issue of whether the Lease requires North Star to accomplish a full interior paint of a unit which has been painted in the previous three years and is in good condition is clearly not already before the Court, and the Government's position is without merit.

**C. Carpet and Vinyl Replacement in Unit 833**

The Government directed North Star to replace the carpet and laundry room vinyl in unit 833 at North Star's expense. With respect to the carpet, the Government had failed to issue work authorizations for repair of occupant-damaged carpet during previous changes of occupancy, and the damage at the change of occupancy at issue included occupant-caused bleach stains and frays which could have been corrected by repair rather than replacement. With respect to the vinyl, there were occupant-caused stains and neglect from lack of cleaning and waxing which is required under Section C.(3)(a)(4) of the Lease. North Star requested a decision from the Contracting Officer, who issued a COD that the vinyl should be replaced at North Star's expense

due to cracks, and that the carpet should be replaced because despite the bleach stains, it had fully depreciated.

The Government contends that this issue relates to portions of Case No. 02-1632C respecting the Government's refusal to issue work authorizations, and of Case No. 98-168C respecting the Government's bad faith determination of responsibility for occupant-damaged floor coverings. However, the issues respecting Unit 833 are not the same. With respect to the carpet, the issue here is not the Government's bad faith in applying a depreciation schedule, but rather the Government's conduct of intentionally not authorizing the correction of occupant damages until the carpet has fully depreciated, so that North Star bears the full burden of replacement. With respect to vinyl, the standard to which occupants must maintain the vinyl has also not yet been brought before the Court. Thus, the Government's position is without merit.

**D. Reimbursement for Light Fixture in Unit 1029**

North Star replaced the light fixture in Unit 1029 due to occupant damage, and billed the Government the cost of replacement: $189.50. The cost of the original fixture – which was installed approximately 16 years ago – was $107.69, and the Government refused to pay the $81.81 cost difference between the two, claiming that North Star had "upgraded" the light fixture. North Star requested a decision from the Contracting Officer that upward adjustments were contemplated under Section C.(1)(t) of the Lease. The Contracting Officer issued a COD that North Star was responsible for the cost difference.

The Government contends that this issue relates to portions of Case No. 02-1632C respecting the failure to issue work authorizations, and Case No. 98-168C respecting bad faith allocation of responsibility for occupant-damaged floor coverings. Clearly, however, it involves neither floor coverings nor depreciation, and does not implicate at all the claims in Case No. 98-

168C. In addition, the issue of which party is responsible for the upward adjustment to the cost of replacing an occupant-damaged light fixture does not implicate that claims in Case No. 1632C respecting the Government's failure to issue work authorizations for occupant damages. Thus, the Government's position is without merit here as well.

**E. Corrections of Vinyl in Units 1090 and 1111**

In units 1090 and 1111, the Government ordered replacement of vinyl for fair wear and tear which was not identified at the pre-termination and termination inspections and could have easily been corrected by repair. North Star conducted repairs which rendered the vinyl "free of cracks, chips, and torn or excessively worn material [with a] pleasing appearance" in accordance with Section E.2(b)(4) of the Lease. Nonetheless, the Government ordered replacement, and North Star requested a COD. The Contracting Officer found that the vinyl in unit 1090 required replacement at North Star's expense, and that the vinyl in 1111 was not work authorized and therefore North Star's responsibility.

Again, the Government contends that Count V implicates claims in Case No. 02-1632C respecting the Government's failure to issue work authorizations, issuance of work authorizations which do not reflect damage listed on the inspection forms, and wrongful rejection of North Star's maintenance; and in Case No. 98-168C respecting bad faith determination of responsibility for occupant-damaged floor coverings. However, the issue here is the Government's conduct in ordering replacement when North Star is financially responsible when repairs would be sufficient in order to maximize the financial impact to North Star, and is not already before the Court.

**F. Vinyl Replacement in Unit 633**

The Government ordered a full replacement of the vinyl in Unit 633 at North Star's expense, despite the fact that the vinyl was of non-pleasing appearance due to the occupant's failure to maintain it in accordance with Section C.3(a)(4) of the Lease. North Star requested a COD, and the Contracting Officer found no evidence that the occupant had failed to maintain the vinyl, and attributed the non-pleasing appearance to "15 years of use."

The Government contends that this issue implicates claims in Case No. 02-1632C that the Government failed to issue work authorizations, and claims in Case No. 98-198C respecting depreciation. However, the issue here is whether the occupant met his obligation to maintain the vinyl in accordance with Section C.3(a)(4) of the Lease, and such issue has not been previously brought before the Court.

**G. List of Repair Costs**

Pursuant to Section C.1(t), North Star shall, with the approval of the Government, establish a list of repair costs to establish the normal maximum amounts to be charged. The Government refused to approve the items on the 2003 List of Repair Costs provided by North Star, even though they were reasonable and based on the cost of materials and labor time, and imposed an extra-contractual requirement that North Star provide invoices for items on the list of repair costs. North Star requested a COD, but the Contracting Officer refused to issue a decision, contending that the request implicated claims already before the Court. Moreover, in its Motion, the Government contends that this issue relates to claims in Case No. 02-1632C respecting the Government's failure to issue work authorizations based on the List of Repair Costs. However, the Government's failure to approve the 2003 List of Repair Costs, and imposition of an extra-contractual requirement as a condition precedent to its approval, is a

separate and distinct issue forth the Government's failure to base work authorizations on List of Repair Cost items, and thus the Government's position is without merit.

**H. Authority to Order Disputed Work**

The Birchwood Housing Manager ("BHM") has taken the position that she, and not the Contracting Officer's Representative ("COR"), has the exclusive authority to order North Star to perform disputed work. However, Section C.2.(b) of the Lease, which sets forth the BHM's responsibilities, does not include the authority to order disputed work. Moreover, in a memorandum dated June 13, 2000, then-Contracting Officer Dennis Klein expressly authorized the COR to provide direction where North Star disputes whether work costing no more than ten thousand dollars is required. North Star sought a COD, and the Contracting Officer issued a decision that North Star must accomplish disputed work directed by the BHM, and that the COR's authority is limited to determining the financial responsibility for ordered work.

In its Motion, the Government contends that this issue is related to the portions of Case No. 02-1632C respecting the Government's failure to issue work authorizations, issuance of work authorizations which do not reflect items identified at the inspections, and wrongful rejection of COM work, and portions of Case No. 98-168C respecting the Government's bad faith application of depreciation. Clearly, the Government's conduct with respect to issuing work authorizations, rejecting North Star's COM work, and depreciation of carpet is wholly unrelated to whether the BHM or COR has the authority to order disputed work. The issue of the scope of the BHM's and COR's authority is not before the Court in either of the two prior lawsuits, and thus the Government's position is without merit.

**I. Gutter Downspout Repairs in Unit 638**

The Government took the position that North Star was financially responsible for replacing the gutter downspout in Unit 638, which was crushed and cracked. North Star sought a COD on whether the damage to the gutter downspout was occupant-caused and therefore the financial responsibility of North Star. The Contracting Officer refused to issue a decision because he contended it would implicate matters already pending before the Court. Moreover, in its Motion, the Government contends that this issue to claims in Case No. 02-1632C respecting the Government's failure to issue work authorizations for the correction of occupant damages. However, contrary to the contention of the Government, the issue of which party bears responsibility for replacement of a crushed and cracked gutter downspout is not before the Court.

**J. Re-painting of Unit 961 and Use of Black Light to Inspect Painting**

The Government has now instituted the practice of using a black light to evaluate and reject the sufficiency of North Star's painting of units. The standard for evaluation set forth in Section E of the Lease is that of "pleasing appearance," defined as an appearance similar to the original finished appearance with only minor, non-objectionable deterioration resulting from normal use. The Government used a "black light" inspection as a basis for ordering North Star to repaint a freshly painted bathroom in Unit 961, when that bathroom was of pleasing appearance. North Star requested a COD on which party was financially responsible for repainting the bathroom in Unit 961, and whether use of a black light was an appropriate means of inspection. The Contracting Officer issued a decision that the Government is not limited in its means of determining the adequacy of repairs, and that use of a black light is reasonable, and that North Star bore the cost of repainting the bathroom in Unit 961.

In its Motion, the Government contends that this issue relates to claims in Case No. 02-1632C respecting the Government's wrongful rejection of North Star's maintenance. However, the issue of black light inspections is separate and distinct issue which has not been previously before the Court. Moreover, the issue in Case No. 02-1632C respecting rejection of North Star's COM work addressed a course of conduct by the Government intended to increase the amount of down days incurred by North Star. Accordingly, the Government's position is without merit.

**K. Countertop and Carpet in Unit 961**

Despite numerous occupant damages to Unit 961 – for example, stains on the bathroom countertops, burns on the kitchen countertops, and burns on the carpet – the Government did not authorize repairs. The Government's conduct with respect to 961 is indicative of its practice of not authorizing repairs of occupant-caused damages for which the Government is financially responsible, but requiring replacement at North Star's expense due to alleged fair wear and tear for units in much better condition than unit 961. North Star requested a COD, but the Contracting Officer declined to issue a decision, stating that these claims were already pending before the Court. In its Motion, the Government contends that this issue relates to claims in Case No. 02-1632C respecting the failure to issue work authorizations, and Case No. 98-168C respecting the bad faith application of depreciation. However, as set forth above, the Government's course of conduct of intentionally not authorizing repairs for occupant damages but ordering excessive repairs when damage results from fair wear and tear is not pending before the Court, and the Government's position lacks merit.

**L. Cleaning of Units**

The Government has taken the position that North Star must accomplish the cleaning of units as part of the current Lease agreement even though cleaning is <u>not</u> North Star's

responsibility under the Lease, has historically been accomplished by a separate Government contractor, was removed from the List of Repair Costs at the Government's direction in 1999, and was offered to North Star as an extra-contractual opportunity during previous settlement discussions. North Star employed a subcontractor to accomplish the cleaning as directed, but billed the Government its actual supervision and overhead costs, rather than the 10% overhead and 10% profit circumscribed by the Lease. The Government refused to pay North Star's actual costs. North Star requested a COD on this issue, and the Contracting Officer issued a decision that the Government can direct cleaning under the Lease, to be accomplished under the Lease terms at the cost of the subcontractor plus only 10% overhead and 10% profit.

In its Motion, the Government claims that this issue relates to Count III of Case No. 98-168C respecting turnaround time for units as a result of change of occupancy, and Case No. 02-1632C respecting the Government's removal of items from the list of repair costs and requirement for subcontractor invoices as a condition for reimbursement. Clearly, however, the issue of whether North Star must now clean all units under the present Lease has not already been raised before the Court, and the Government's position is without merit.

In sum, none of the issues in this action are before the Court in the stayed litigations and, they do not relate in any way to the Government's stated areas of investigation as set forth in its March 24, 2003 letter (attached).

**IV. Conclusion**

For the reasons set forth above, the Court should grant North Star's Motion to Strike the *in camera* affidavit which was submitted without permission of the Court, and deny Defendant's Motion to Stay Proceedings.

Dated: February 6, 2004

Respectfully Submitted,

s/ Paul W. Killian

______________________________

PAUL W. KILLIAN
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Ave. N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Plaintiff's Opposition to Defendant's Motion to Stay Proceedings and Motion to Strike In Camera Submission of Supporting Affidavit was served electronically this 6th day of February, 2004, on:

Donald E. Kinner, Esq.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

Attorney for Defendant

s/ Paul W. Killian

Paul W. Killian