IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NORTH STAR ALASKA HOUSING CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-2699C |
| | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY PROCEEDINGS AND OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE IN CAMERA SUBMISSION OF SUPPORTING AFFIDAVIT**

Defendant respectfully requests that the proceedings in this case should be stayed on the grounds that continuing proceedings at this time would interfere with and compromise the criminal investigation of North Star Alaska Housing Corporation. Similarly, proceeding in parallel to the criminal investigation will interfere with discovery and witness testimony in the civil cases. The Court previously found that Cases No. 98-168C and No. 02-1632C could not proceed without jeopardizing the criminal investigation. Because this most recent complaint merely brings forth additional facts to support the same allegations that undergird the claims in the prior two complaints, litigation of this complaint also should not proceed at this time.

Defendant also respectfully requests that Plaintiff's Motion to Strike In Camera Submission of Supporting Affidavit be denied. We apologize if we unintentionally committed an impropriety in failing to obtain the Court's permission to make an in camera submission. However, the in camera submission with our motion, in accordance with the Court's April 3, 2003 Order, reports on the progress of the criminal investigation. In accordance with that order, the declaration also identifies the scope of the criminal investigation, as well as the relationship

between the claims and allegations in this case and the claims and allegations in the prior two cases. Plaintiff's assertion that the Court's April 3, 2003 Order in Case Nos. 98-168C and 02-1632C is inapplicable to this lawsuit is incorrect.

**I. The Scope of the Criminal Investigation Encompasses the Allegations and Claims in North Star's Most Recent Complaint**

Plaintiff wrongfully asserts that the issues in this case are "newly-arising under the Lease" and "not already before the Court," and, therefore, could not possibly be the subject of the criminal investigation, which began in March, 2003. North Star supports this assertion by attaching the Government's March 24, 2003 letter to North Star summarizing the findings of the U.S. Army-Alaska Internal Review and Compliance Office (IRACO) investigation of four discrete issues arising from North Star's administration of the Lease. The letter states that the IRACO findings were forwarded to the Army's Criminal Investigation Command to determine whether further investigation was warranted. As stated in the in camera submission, further investigation, involving an Assistant United States Attorney and a Grand Jury, has indeed occurred and the scope of the investigation now encompasses issues implicated by the allegations and claims in all three of North Star's complaints. Furthermore, plaintiff's assertion that the issues in this case are "newly-arising under the Lease" and "not already before the Court" is simply wrong, as discussed below.

**II. The Issues in This Case Are The Same as the Issues in the Prior Two Lawsuits and Litigation of Them Would Compromise the Criminal Investigation**

The contracting officer decisions at issue in the three lawsuits all concern the same issues. In part, these common issues include defining exactly what the Lease contemplates as necessary maintenance to address routine wear and tear as opposed to occupant damage, and the

parties' liability with respect to each when it comes to meeting the aesthetic and performance standards of the Lease. One of North Star's over-arching theories in all three of these cases is that the Government wrongfully refuses to identify and pay for repairs necessitated by occupant damage and, instead, directs North Star to accomplish the work as routine maintenance. Another theory is that the Government prevents North Star from meeting the change of occupancy maintenance times specified in the Lease by wrongfully applying the downtime calculation provisions in the Lease, requiring work of North Star beyond what the Lease requires, and wrongfully rejecting the change of occupancy maintenance that North Star performs. Each of the CODs at issue in this lawsuit involves new factual instances but rely on the same theories of recovery advanced in North Star's prior two Complaints. As set forth in the Government's Motion to Stay Proceedings and In Camera Submission of Supporting Affidavit, the scope of the criminal investigation implicates these theories of recovery.

This most recent complaint filed by North Star includes three counts: 1) Breach of Contract; 2) Breach of the Duty of Good Faith and Fair Dealing; and 3) Declaratory Judgment. Case No. 02-1632C includes the exact same three counts, premised on some of the same allegations. Case No. 98-168C also includes a count "Breach of the Duty of Good Faith and Fair Dealing" and in the prayer requests declaratory relief on many issues, several of which are presented again in Case No. 02-1632C and this case.

This Court already has determined that litigation of the issues presented in Cases No. 98-168C and 02-1632C cannot proceed without jeopardizing the criminal investigation (and conversely, without the criminal investigation compromising discovery and trial in the civil litigation). As recognized by the Assistant United States Attorney's in camera declaration, this

case presents only additional incidences of the facts and theories of recovery in North Star's prior complaints, and should be stayed along with them.

**A. Count I—Carpet Replacement in Unit 884**

The contracting officer decision regarding carpet replacement in Unit 884 requires North Star to replace damaged carpet with carpet that matches the existing carpet in accordance with section E of the Lease Maintenance Annex. North Star alleges in paragraphs 14-18 of its Complaint that the Government wrongfully required North Star to bear the cost of ensuring the replaced carpet matched the existing carpet because the carpet replacement was due to occupant damage. The allegations of this count and North Star's theory of recovery implicate the same Lease interpretation issues as those raised in Case No. 02-1632C paras. 38-47, which allege that the Government wrongfully requires North Star to perform occupant-damage repairs without reimbursement. In this situation, North Star chose to replace all carpet adjacent to the damaged carpet with carpet of a different color that it used to replace the damaged carpet instead, of simply buying carpet that was the same color as the undamaged carpet to repair the damaged area. North Star alleges that the Government wrongfully refused to pay for replacement of the undamaged carpet. This count also implicates paragraph 63 of Case No. 02-1632, which alleges that the Government wrongfully rejects North Star's change of occupancy maintenance, and paragraph 49(c) of Case No. 98-168C, which alleges that the Government has breached its duty of good faith and fair dealing "in connection with . . . . (c) responsibility for replacement of tenant-damaged floor coverings and carpeting and related appurtenances." North Star makes the same claim of breach of the duty of good faith and fair dealing in its most recent Complaint.

**B. Count II—Interior Painting in Unit 704**

The COD at issue in this Count concerns whether North Star was required to do a completely paint the interior at the change of occupancy as part of its maintenance requirements. Additionally, North Star's Complaint alleges that the Government's interpretation of the Lease to require a complete painting of the interior on Unit 704 is a breach of contract and a breach of the Government's duty of good faith and fair dealing. Paragraphs 90-95 of Case No. 02-1632C also allege, using the same language as this Complaint, that the facts of that Complaint amount to a breach of contract and a breach of the Government's duty of good faith and fair dealing. The allegations pertaining to this Count simply represent another instance of the facts and theories of recovery already alleged by North Star in its prior complaints.

**C. Count III—Carpet and Vinyl Replacement in Unit 833**

Paragraphs 29-38 in North Star's Complaint allege that the Government wrongfully required North Star to replace carpet and vinyl as a maintenance item instead of authorizing it as a repair necessitated by occupant damage. These allegations are identical to the allegations in paragraphs 38-47, and, particularly, paragraph 46, in Case No. 02-1632C. Paragraph 46 of Case No. 02-1632C states "The Government repeatedly and with the intention to harm North Star has refused to issue work authorizations to North Star to repair occupant-caused damages and maintain the Premises." Paragraphs 29 and 30 of the most recent Complaint allege that the Government ordered replacement of the floor coverings at North Star's expense allegedly due to fair wear and tear and that North Star maintained the replacements were necessitated by occupant damage. This Count also represents another alleged instance of the allegations made by North Star in paragraph 49(c) of Case No. 98-168C that the Government has breached its

duty of good faith and fair dealing in connection with "(c) responsibility for replacement of tenant-damaged floor coverings and carpeting and related appurtenances."

**D. Count IV—Reimbursement for Light Fixture in Unit 1029**

North Star alleges in paragraphs 39-42 of its Complaint that the Government wrongfully required North Star to bear the difference in cost between replacement of an occupant-damaged light fixture with a similar fixture and the upgraded and more expensive fixture selected by North Star. These allegations implicate the same issues and lease interpretation questions raised by paragraphs 38-47 of Case No. 02-1632C. Paragraph 46 of Case No. 02-1632C states "The Government repeatedly and with the intention to harm North Star has refused to issue work authorizations to North Star to repair occupant-caused damages and maintain the premises." North Star's Complaint alleges that this Count constitutes a breach of the Government's duty of good faith and fair dealing. Case No. 98-168C also alleges that Government breaches its duty of good faith and fair dealing "in connection with: . . . (c) responsibility for replacement of tenant damaged floor coverings and carpeting *and related appurtenances.*" (emphasis added).

**E. Count V—Corrections of Vinyl in Units 1090 and 1111**

North Star alleges in paragraphs 43-48 of its Complaint that the Government wrongfully ordered the replacement of vinyl in units 1090 and 1111 instead of permitting North Star to repair cracks in the vinyl. The COD indicates that the Government did not accept North Star's change of occupancy maintenance for unit 1090 because of the vinyl repair and returned the unit to North Star to replace the vinyl. These allegations and circumstances represent another instance of the allegations North Star advances in paragraph 63 of Case No. 02-1632C that the Government wrongfully rejects North Star's maintenance on units, and in paragraph 49(c) of

Case No. 98-168C that the Government breaches its duty of good faith and fair dealing in connection with responsibility for replacement of tenant-damaged floor coverings. North Star also alleges that replacement of the vinyl in unit 1111 was not identified in the pre-termination or termination inspections as required by the Lease. These allegations pertain to those made in paragraphs 55-57 of Case No. 02-1632 that work authorizations are not based on maintenance identified at the pre-termination and termination inspections. These allegations do not represent a new claim, but instead represent another instance of claims already made by North Star in its prior Complaints.

**F. Count VI—Vinyl Replacement in Unit 633**

In this Count, North star alleges that the Government directed replacement of vinyl due to normal wear and tear over North Star's objections that the vinyl required replacement due to occupant damage. North Star's allegations in Count VI represent another instance of allegations made by North Star in its prior two complaints that the Government wrongfully fails to authorize repairs for occupant damage and that the Government breaches its duty of good faith and fair dealing in determining responsibility for replacement of tenant-damaged floor coverings. These allegations already are made in paragraphs 38-47 of Case No. 02-1632 and paragraph 49(c) of Case No. 98-168C.

**G. Count VIII—Authority to Order Disputed Work**

North Star's allegations in this Count represent another instance of issues already pled in North Star's prior Complaints. In the contracting officer decision on this issue, the contracting officer found that the Lease requires North Star to perform *both* routine maintenance and occupant damage repairs at the direction of the Birchwood Housing Manager. The contracting

officer found that the delegated authority of the Contracting Officer's Representative ("COR") included determining in the event of a dispute whether the directed work was maintenance or repair of occupant damage, and thus which party was financially responsible for the work. The legal issue in the Count is the same as that raised by paragraphs 38-47 in Case No. 02-1632C (the Government's wrongful failure to work authorize occupant damage repairs) and paragraph 49(c) in Case No. 98-168C (the Government's breach of its duty of good faith and fair dealing in determining responsibility for occupant damaged floor coverings).

**H. Count X—Repainting of Unit 961 and Use of Black Light to Inspect Painting**

North Star alleges in paragraphs 67-70 of its Complaint that the Government rejected North Star's change of occupancy maintenance on the unit because the COR inappropriately used a black light to inspect the quality of the painting in the bathroom. North Star asserts that the paint job was adequate. This allegation represents another instance of allegations already made in paragraph 63 of Case No. 02-1632 that the Government wrongfully rejects North Star's change of occupancy maintenance.

**I. Count XII—Cleaning of Units**

North Star alleges in paragraph 78 of its Complaint that the Government has wrongfully required North Star to clean units after removal of the task from the List of repair costs and in violation of the contract terms. North Star also alleges that the Government does not appropriately reimburse North Star for the costs it incurs for its subcontractor and supervision for cleaning. North Star already alleged in paragraph 50 of Case No. 02-1632C that the Government wrongfully removes items unilaterally from the list of repair costs and that the Government does not reimburse work authorizations based on the list of repair costs. North Star

also already alleged in paragraphs 51 and 52 of Case No. 02-1632C that the Government wrongfully requires subcontractor invoices as a precondition to reimbursement. This Count is therefore just another alleged factual scenario supporting a theory of recovery already stated in North Star's prior Complaint. This Count also implicates North Star's allegations in Case No. 02-1632C concerning the Government's practices in calculating down days, particularly paragraph 68, which alleges that "the Government, repeatedly and with the intention to harm North Star, has including [sic] all work performed on units . . . in its change of occupancy downtime calculations, and using such calculations to deduct rent from North Star."

### J. Counts Already Before the Court: Count VII—List of Repair Costs; Count IX—Gutter Downspout Repairs on Unit 638; and Count XI—Countertop and Carpet in Unit 961

These three Counts represent decisions that North Star appealed because the contracting officer found that the issues presented already were before this Court and he was thus without the authority to respond in accordance with 28 U.S.C. § 516. North Star alleges in paragraphs 54 and 56 of Count VII, List of Repair Costs, that the Government wrongfully required submittal of invoices for items on the List of Repair Costs. The same allegation is made in paragraphs 52 and 86 of Case No. 02-1632C. In Count IX, Gutter Downspout Repairs, on Unit 638, North Star alleges that the Government wrongfully required that a damaged gutter downspout be corrected at North Star's expense and failed to authorize the repair as occupant damage. Similarly, North Star's allegations in Count XI, Countertop and Carpet in Unit 961, are simply that the Government again has wrongfully failed to authorize occupant damage repair work. North Star already has advanced the exact same allegations in paragraphs 38-47 of Case No. 02-1632C that the Government fails to work authorize occupant damage work. Counts IX and XI of the current

complaint present no separable issue upon which the contracting officer would have authorityto act.

## CONCLUSION

Based upon the related allegations presented in North Star's complaints, some of which are identical, we respectfully request that the Court stay proceedings in case No. 03-2699C to protect the integrity of the criminal investigation of North Star as identified in the supporting affidavit submitted in camera with the Government's original motion.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/David M. Cohen
DAVID M. COHEN
Director

OF COUNSEL:

s/Donald E. Kinner
DONALD E. KINNER
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7561

Attorneys for the Defendant

ANNE NELSON ROTH
Assistant District Counsel
United States Army Corps of Engineers
Alaska District

February 23, 2004

CERTIFICATE OF FILING

I hereby certify that on February 23, 2004 a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY PROCEEDINGS AND OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE IN CAMERA SUBMISSION OF SUPPORTING AFFIDAVIT was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Donald E. Kinner